# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**WILLIAM RAY COLLINS**                                                            **PLAINTIFF**

**v.**                                    **No. 4:06CV131-D-A**

**CHRISTOPHER EPPS, ET AL.**                                                 **DEFENDANTS**

## REPORT AND RECOMMENDATION

On January 24, 2006, plaintiff William Ray Collins (# 56532), an inmate in the custody of the Mississippi Department of Corrections and housed in the Mississippi State Penitentiary, appeared before the undersigned for an evidentiary hearing to determine the merits of his motion for a preliminary injunction. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff claims that the defendants have failed to classify him properly – and have failed to place him in protective custody – leaving him exposed to mortal danger while housed at Unit 32 at the Mississippi State Penitentiary. For the reasons set forth below, the motion for preliminary injunction should be denied, and the instant case should be dismissed with prejudice.

## Preliminary Injunction Standard

A party must prove four elements to be entitled to preliminary injunctive relief: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not disserve the public interest. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

---

[1] 28 U.S.C. § 1915(g).

## The Plaintiff's Allegations

The plaintiff's factual allegations, as supplemented with documents provided by the Mississippi Department of Corrections and the plaintiff's testimony at the hearing, are detailed in the chronology below:

| | |
|---|---|
| April 2006: | Kevin Davis, a member of the Black Panther Party, brandished a knife at the plaintiff and threatened to kill him. This incident occurred during the plaintiff's stay at the Tallahatchie County Correctional Facility. The plaintiff informed Floor Officer (Mr. Jenkins) that the plaintiff's life was in imminent danger. Jenkins notified Unit Manager Reddick of the situation. The plaintiff "Red-Tagged" Kevin Davis. |
| April 2006 : | As a result of this incident, the plaintiff was transferred to the segregation unit at the Tallahatchie County Correctional Facility. |
| April 2006: | While the plaintiff was housed at the segregation unit, Vice Lord gang member Obbie Murphy came to segregation and threatened to kill the plaintiff anywhere he could catch the plaintiff – even at church. Murphy told the plaintiff that the Vice Lords and Gangster Disciples had both marked him for death. The plaintiff "Red-tagged" Obbie Murphy. |
| April 26, 2006: | Plaintiff was transferred back to the Mississippi State Penitentiary. He immediately requested protective custody based upon the threats from Obbie Murphy |
| May 31, 2006: | Pamela Robinson of Offender Services placed the plaintiff on protective custody. As a result, the plaintiff was moved from Unit 29 to Unit 32-A in A-Tier, a place designated for high-risk Vice Lord gang members. |
| July 2, 2006 - July 5, 2006: | A brutal gang war between the Vice Lords and the Gangster Disciples broke out in Unit 32-A (A-Tier). Seven inmates were stabbed and scalded with hot water. |
| July 7, 2006: | The plaintiff sought a transfer to a low-risk protective custody facility by writing to the following prison officials: Commissioner Epps, Deputy Commissioner Sparkman, Superintendent Lawrence Kelly, Warden Chapman, Pamela Robinson (with Offender Services), and Associate Warden Darlester Foster. |

| | |
|---|---|
| July 9, 2006 - July 15, 2006: | Another inmate from the plaintiff's building was stabbed as a result of the gang war. |
| July 20, 2006: | Pamela Robinson placed the plaintiff on protective custody.[2] |
| July 27, 2006: | Several more inmates in the plaintiff's building were stabbed as a result of the gang war. |
| August 15, 2006: | Twenty-five knives were confiscated on the plaintiff's tier during a shakedown. |
| August 16, 2006: | Another inmate in the plaintiff's unit was stabbed. |
| August 25, 2006: | An inmate from the plaintiff's tier was killed. |
| September 2, 2006: | Two trusties assigned to repair a shower on the plaintiff's tier were stabbed. |
| September 6, 2006: | A trusty on the plaintiff's tier was stabbed and scalded. The plaintiff states that he refuses to take showers, go to recreation, or seek medical treatment because he is afraid he will be attacked and killed. Throughout his pleadings he has requested to be transferred to another facility. |
| October 5, 2006 - October 13, 2006: | Obbie Murphy, whom the plaintiff "Red-tagged" on May 31, 2006 was housed in the same building with the plaintiff, although in a different tier. |

The plaintiff also testified that inmates on protective custody at Unit 32 are taken to and from the exercise yard at the same time as gang members and other extremely dangerous inmates, thus putting the plaintiff and other inmates on protective custody at great risk of attack.

---

[2]This is a bit confusing to the court because the plaintiff stated that he was placed in protective custody on May 31, 2006. For this reason, it is unclear why he would need to be placed back on protective custody. A response to the plaintiff's grievance stated that the plaintiff had been removed from protective custody upon his move to the Mississippi State Penitentiary. From the hearing it appears that the plaintiff's protective custody paperwork was misplaced upon the plaintiff's move from the Wilkinson County Correctional Facility.

## Discussion

The plaintiff sets forth three basic theories for relief. First, he claims that he has requested to be placed in Protective Custody, but MDOC officials have not done so, and their failure to do so has left him vulnerable to attack from hostile gang members. Second, he claims that inmates he has "Red-tagged" remain legitimate threats to him because they are housed in the same building as him. Finally, he argues that conditions within Unit 32-A of the Mississippi State Penitentiary have become so dangerous that his mere presence there puts him in mortal danger. The evidence presented at the hearing, however, did not support the plaintiff's allegations.

## Evidence Presented at the Hearing

During his direct testimony, the plaintiff repeated the allegations of his complaint and his motion for a preliminary injunction. During cross-examination, however, the plaintiff backed away from nearly all the allegations. He did not witness any severe stabbings of inmates on his tier in Unit 32-A. He did not witness the killing of an inmate. He did not witness the confiscation of 25 knives from inmates on his tier. He did not witness two trusties getting stabbed or scalded. He does not know the classification of other inmates on his tier – and thus cannot know whether the inmates being led to the exercise yard are on protective custody or not. Indeed, he personally witnessed virtually none of the incidents described in his complaint and motion for a preliminary injunction. Nearly all of his allegations are based on the statements of other inmates housed in Unit 32-A.

The plaintiff did testify that he has witnessed inmates jabbing at other inmates with improvised spears, throwing hot water at each other, and assaulting guards. The plaintiff did not,

however, testify that any guard or inmate was seriously injured from the incidents he witnessed. The plaintiff is no longer housed in Unit 32-A, the unit at issue in his complaint, and he has not been harmed – or even threatened – since his arrival at his current cell in Unit 32-B.

Darlester Foster ("Foster") is the Associate Warden of Area 3, which includes Unit 32. She reviews the work of case managers for inmates housed in her area. The plaintiff is housed in protective custody; as such, he is locked down 23 hours per day. Upon the plaintiff's request, he has been placed in a "front cell," which is in full view of the guard tower. The plaintiff requested this placement to reduce further the risk of being attacked by another inmate because even the most violent inmates are usually reluctant to carry out an attack in full view of the guard tower.

Dwight Presley ("Presley") is the Warden of Area 3 at the Mississippi State Penitentiary; Area 3 includes Unit 32. Presley testified that the only times the plaintiff – and all other inmates on protective custody – leave their cells is for showers, exercise, and visits to the medical clinic. During those times the inmates are strip-searched and restrained. Inmates on protective custody are not intermingled with those who are not during the movement of inmates to and from their cells. Presley testified further that the Mississippi Department of Corrections does not have a safer place to house the plaintiff in protective custody than in Unit 32 at the Mississippi State Penitentiary. Both Presley and Foster testified that the only other location to hold protective custody inmates is in the Wilkinson County Correctional Facility, but D-custody inmates such as the plaintiff are not permitted to be housed there.

Records indicate that Obbie Murphy, the alleged Vice Lord who threatened the plaintiff, was housed in Unit 32-A at the same time as the plaintiff for a short time in October. The plaintiff had previously "Red-tagged" Obbie Murphy so that they could not be housed together.

The plaintiff argues that he was being housed "with" Obbie Murphy because they were both in the same building – Unit 32-A. The problem with this theory is that the plaintiff and Murphy can be housed in the same building without being housed "together." The plaintiff was housed in Unit 32-A, Zone A2; Murphy was housed in Unit 32-A, Zone A1. The inmates in Unit 32-A are locked down twenty-three hours of each day. As such, there are few opportunities for inmates within the same zone to come into contact. In addition, Obbie Murphy was not even housed in the same zone as the plaintiff, and now the plaintiff is being housed in a different building altogether – Unit 32-B. Therefore, Obbie Murphy has not had the opportunity to contact the plaintiff since the plaintiff's move to Unit 32. As such, the plaintiff's claim for injunctive relief regarding this issue is without merit and, because the plaintiff has been removed from Unit 32-A, has also become moot.

The plaintiff was placed on D-custody, the most restrictive form of custody, as a result of the Objective Classification System, also known as the "Points System." According to the testimony of Darlester Foster, the plaintiff was found guilty of assaulting a staff member at the Wilkinson County Correctional Facility. This finding, in turn, caused the plaintiff's point total under the Objective Classification System to rise to the level necessary to classify the plaintiff as D-custody. Both Presley and Foster testified that the plaintiff's current location, the single-occupancy front cell of a protective custody tier in Unit 32-B, is the safest place he can be within the Mississippi Department of Corrections.

The plaintiff's case has several additional problems. First, according to Ricky Scott ("Scott"), the Security Threat Group[3] Coordinator at the Mississippi State Penitentiary, the plaintiff himself was validated as a member of the Vice Lord gang while housed at the Wilkinson County Correctional Facility. Further, Scott stated that Obbie Murphy, one of the men who allegedly threatened the plaintiff, and whom the plaintiff identified as a "notorious" member of the Vice Lord gang, has never been validated as a member of the Vice Lords or any other gang. In addition, Scott testified that the Black Panther Party (the Security Threat Group to which Kevin Davis allegedly belongs) is a *political party* – not a gang – and, even assuming that it *could* be characterized as a gang, its members represent less than 1% of the prison gang population. The Mississippi Department of Corrections has never had an incident arising out of the activities of the Black Panther Party.

Gangs are pervasive throughout the prison system. Ricky Scott testified that there is no record of a hit being placed on the plaintiff. If, however, Scott's information is incorrect, the Wilkinson County Correctional facility would be extremely dangerous for the plaintiff because the protective custody inmates there are housed in an open bay with ready access to each other. If any of the inmates there were gang members and aware of the hit, then the plaintiff would have no separation and no protection from those who wish him dead. He is much safer in Unit 32-B.

The plaintiff has not proven the first element of preliminary injunctive relief, a substantial likelihood of success on the merits. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). The evidence presented at the hearing, as discussed above, showed

---

[3]Security Threat Group is synonymous with "prison gang" in the nomenclature adopted by the Mississippi Department of Corrections.

that the plaintiff is safer in his current location than in any other within the Mississippi Department of Corrections. As such, the plaintiff's request that he be removed from Unit 32 must be denied.

### Hearing May Be Used to Decide Case on the Merits

The entire case is now ripe for decision on the merits. "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." FED. R. CIV. P. 65(a)(2). This rule is particularly relevant to the instant case because the issues in the complaint and in the motion for injunctive relief are identical. The evidence presented at the hearing showed that the plaintiff was not entitled to relief. Although the plaintiff was allegedly threatened while housed in the Tallahatchie County Correctional Facility, he has never been attacked or harmed, and he is now in the safest, most isolated place he can be within Mississippi's prison system. The undersigned therefore recommends that the plaintiff's motion for preliminary injunctive relief be denied and that the instant case be dismissed with prejudice.

### Handling of Objections, Acknowledgment of Receipt

The court refers the parties to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date, and "a party's failure to file written objections to the findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within ten (10) days of this date. The plaintiff is warned that failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.

Respectfully submitted this 2nd day of February, 2007.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE